Slip Op. 23-147

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,**

       **Plaintiff,**

**and**

**CELTIC CO., LTD., ET AL.,**

       **Consolidated Plaintiffs,**
    **v.**

**UNITED STATES,**

       **Defendant,**

**and**

**COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,**

       **Defendant-Intervenor.**

</td><td>

**Before:  Jennifer Choe-Groves, Judge**

**Consol. Court No. 18-00002**

</td></tr>
</table>

## OPINION AND ORDER

[Sustaining the fifth remand redetermination of the U.S. Department of Commerce, following the final determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China.]

Dated: October 10, 2023

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiff Linyi Chengen Import and Export Co., Ltd., Consolidated Plaintiffs Far East American, Inc. and Shandong

Dongfang Bayley Wood Co., Ltd., and Consolidated Plaintiffs and Plaintiff-Intervenors Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Anhui Hoda Wood Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Shandong Qishan International Trading Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd.

Jeffrey S. Neeley and Stephen W. Brophy, Husch Blackwell LLP, of Washington, D.C., for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., Highland Industries Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd., G.D. Enterprise Limited, Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic & Trade Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and Qingdao Top P&Q International Corp.

Jeffrey S. Grimson and Jill A. Cramer, Mowry & Grimson, PLLC, of Washington, D.C., for Consolidated Plaintiffs Taraca Pacific, Inc., Canusa Wood Products, Ltd., Concannon Corporation d/b/a Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and USPLY LLC.

Tara K. Hogan, Assistant Director, and Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel was Savannah R. Maxwell, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Timothy C. Brightbill, Jeffrey O. Frank, Stephanie M. Bell, and Elizabeth S. Lee, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood.

      Choe-Groves, Judge:  In the Court's sixth opinion in this litigation that has spanned nearly six years, the Court finally sustains Commerce's determinations concerning the import of hardwood and decorative plywood and certain veneered panels into the United States from the People's Republic of China ("China"), subject to the final affirmative determination in an antidumping duty investigation by the U.S. Department of Commerce ("Commerce"), including an issue of first impression regarding the inclusion of certain voluntary-review firms in an anti-dumping duty order.  See Certain Hardwood Plywood Products from the People's Republic of China, 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (final determination of sales at less than fair value, and final affirmative determination of critical circumstances, in part), as amended, 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (amended final determination of sales at less than fair value and antidumping order) ("Order") (collectively, "Final Determination"); see also Issues and Decision Mem. for the Final Determination of the Antidumping Duty Investigation of Certain Hardwood Plywood Products from People's Republic of China ("Final IDM"), ECF No. 25-7.

      Before the Court are the Final Results of Redetermination Pursuant to Court

Remand ("Fifth Remand Redetermination"), ECF No. 221-1, which the Court

ordered in Linyi Chengen Imp. & Exp. Co. v. United States ("Linyi Chengen V"),

46 CIT __, 609 F. Supp. 3d 1392 (2022).  Plaintiff Linyi Chengen Import & Export

Co. ("Linyi Chengen") did not file comments in response to the Fifth Remand

Redetermination.  Consolidated Plaintiffs Zhejiang Dehua TB Import & Export

Co. ("Dehua TB"), Taraca Pacific, Inc. ("Taraca"), and Celtic Co. ("Celtic") filed

their comments in support of the Fifth Remand Redetermination.

Dehua TB filed comments collectively on behalf of itself and Highland

Industries, Inc., Jiashan Dalin Wood Industry Co., Happy Wood Industrial Group

Co., Jiangsu High Hope Arser Co., Suqian Yaorun Trade Co., Yangzhou Hanov

International Co., G.D. Enterprise Ltd., Deqing China-Africa Foreign Trade Port

Co., Pizhou Jin Sheng Yuan International Trade Co., Xuzhou Shuiwangxing

Trading Co., Cosco Star International Co., Linyi City Dongfang Jinxin Economic

& Trade Co., Linyi City Shenrui International Trade Co., Jiangsu Qianjiuren

International Trading Co., and Qingdao Top P&Q International Corp.  Cmts. Supp.

Remand Determination Behalf Consol. Pls. [Dehua TB et al.] ("the Dehua TB

Comments" or "Dehua TB's Cmts."), ECF No. 226.

Taraca filed comments collectively on behalf of itself and Canusa Wood

Products, Ltd., Concannon Corp. d/b/a Concannon Lumber Co., Fabuwood

Cabinetry Corp., Holland Southwest International, Inc., Liberty Woods

International, Inc., Northwest Hardwoods, Inc., Richmond International Forest

Products, LLC, and USPLY LLC.  Consol. Pls.' [Taraca et al.] Cmts. Supp. Fifth

Remand Redetermination ("the Taraca Comments" or "Taraca's Cmts."), ECF No.

229.

     Celtic filed comments collectively on behalf of itself and Anhui Hoda Wood

Co., Far East American, Inc., Jiaxing Gsun Import & Export Co., Jiaxing Hengtong

Wood Co., Linyi Evergreen Wood Co., Linyi Glary Plywood Co., Linyi Jiahe

Wood Industry Co., Linyi Linhai Wood Co., Linyi Hengsheng Wood Industry Co.,

Linyi Huasheng Yongbin Wood Co., Linyi Mingzhu Wood Co., Linyi Sanfortune

Wood Co., Qingdao Good Faith Import & Export Co., Shanghai Futuwood Trading

Co., Shandong Qishan International Trading Co., Suining Pengxiang Wood Co.,

Suqian Hopeway International Trade Co., Suzhou Oriental Dragon Import &

Export Co., Xuzhou Andefu Wood Co., Xuzhou Jiangyang Wood Industries Co.,

Xuzhou Longyuan Wood Industry Co., Xuzhou Pinlin International Trade Co.,

Xuzhou Shengping Import & Export Co., and Xuzhou Timber International Trade

Co.  Consol. Separate Rate Pls.' Reply Cmts. Supp. Fifth Remand Redetermination

("the Celtic Comments" or "Celtic's Cmts."), ECF Nos. 230, 231.

     The Court refers collectively to the non-examined parties that filed the

Dehua TB Comments, the Taraca Comments, and the Celtic Comments as the

"Separate Rate Plaintiffs."

Consolidated Plaintiffs Linyi Sanfortune Wood Co., Ltd. ("Sanfortune

Wood") and Xuzhou Longyuan Wood Industry Co., Ltd. ("Longyuan Wood") filed

separate comments in opposition to the Fifth Remand Redetermination.

[Sanfortune Wood's and Longyuan Wood's] Cmts. Opp'n Fifth Remand

Redetermination ("Sanfortune Wood's and Longyuan Wood's Cmts."), ECF No.

223.

Defendant United States ("Defendant") filed its comments in support of the

Fifth Remand Redetermination.  Def.'s Cmts. Supp. Remand Redetermination

("Def.'s Cmts."), ECF No. 227.

Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood

("Defendant-Intervenor" or "the Coalition") filed comments in opposition to and in

support of the Fifth Remand Redetermination.  [Def.-Interv.'s] Cmts. Opp'n

Commerce's Fifth Remand Redetermination ("Def.-Interv.'s Opp'n Cmts."), ECF

No. 224; [Def.-Interv.'s] Cmts. Supp. Commerce's Fifth Remand Redetermination

("Def.-Interv.'s Supp. Cmts."), ECF No. 228.

After oral argument was held on July 12, 2023, the Court invited the Parties

to file post-oral argument letters addressing the issue of reopening the record.  Oral

Argument (July 12, 2023), ECF No. 237; Order (July 13, 2023), ECF No. 238.

Plaintiff, Defendant-Intervenor, and Consolidated Plaintiffs Dehua TB, Taraca, and

Celtic filed their post-oral argument letters.  [Consol. Pls. Dehua TB's] Resp.

Court's Invitation Submit Post-Argument Letter ("Dehua TB's Suppl. Letter"),

ECF No. 240; [Pl.'s and Consol. Pls. Celtic's] Post Oral Argument Letter

("Celtic's Suppl. Letter"), ECF No. 241; [Consol. Pls. Taraca's] Resp. Court's

Invitation Submit Post-Argument Letter ("Taraca's Suppl. Letter"), ECF No. 242;

Def.-Interv.'s Suppl. Cmts. ("Def.-Interv.'s Suppl. Letter"), ECF No. 243.

Defendant did not file a post-oral argument letter.  Sanfortune Wood and

Longyuan Wood did not file separate post-argument letters but were included in

Celtic's post-argument letter.  See Celtic's Suppl. Letter. at 1 n.1.

    For the reasons discussed below, the Court sustains Commerce's <u>Fifth</u>

<u>Remand Redetermination</u>.

## ISSUES PRESENTED

    The Court reviews the following issues:

1. Whether Commerce's separate rate for the non-examined companies that
   were granted separate rate status is in accordance with law; and

2. Whether Commerce's determinations to exclude Dehua TB and
   Jiangyang Wood from the Order and to include Sanfortune Wood and
   Longyuan Wood in the Order are in accordance with law.

## BACKGROUND

    The Court presumes familiarity with the underlying facts and procedural

history of this case and recites the facts relevant to the Court's review of the <u>Fifth</u>

Remand Redetermination.  See Linyi Chengen Imp. & Exp. Co. v. United States

("Linyi Chengen I"), 43 CIT__, __, 391 F. Supp. 3d 1283, 1288–92 (2019); Linyi

Chengen Imp. & Exp. Co. v. United States ("Linyi Chengen II"), 44 CIT __, __,

433 F. Supp. 3d 1278, 1281–83 (2020); Linyi Chengen Imp. & Exp. Co. v. United

States ("Linyi Chengen III"), 44 CIT __, __, 487 F. Supp. 3d 1349, 1353–54

(2020); Linyi Chengen Imp. & Exp. Co. v. United States ("Linyi Chengen IV"), 45

CIT __, __, 539 F. Supp. 3d 1269, 1273–74 (2021); Linyi Chengen V, 46 CIT at

__, 609 F. Supp. 3d at 1395–97.

Commerce initiated an antidumping investigation after reviewing an

antidumping duty petition submitted by Defendant-Intervenor.  See Certain

Hardwood Plywood Products from the People's Republic of China, 81 Fed. Reg.

91,125 (Dep't of Commerce Dec. 16, 2016) (initiation of less-than-fair-value

investigation); Def.-Interv.'s Pets. Imposition Antidumping Countervailing Duties

("Petition") (Nov. 18, 2016), PR 1–9, CR 1.  The Petition contained price quotes,

i.e., "two offers for sale for hardwood plywood produced in [China] from a

Chinese exporter," as the basis for its estimated dumping margins ranging from

104.06% to 114.72%.  See id. at 91,128–29.  Commerce accepted applications

from exporters and producers seeking to obtain separate rate status in the

investigation ("separate rate applications") to avoid the country-wide dumping

margin because the investigation involved products from China, a non-market

economy.  See id. at 91,129.

In the Preliminary Determination, Commerce selected Consolidated Plaintiff Shandong Dongfang Bayley Wood ("Bayley") and Linyi Chengen as the only mandatory respondents in the investigation.  See Certain Hardwood Plywood Products from the People's Republic of China, 82 Fed. Reg. 28,629 (Dep't of Commerce June 23, 2017) (preliminary affirmative determination of sales at less than fair value, preliminary affirmative determination of critical circumstances, in part), as amended, 82 Fed. Reg. 32,683 (Dep't of Commerce July 17, 2017) (amended preliminary determination of sales at less than fair value) (collectively, "Preliminary Determination"); see also Decision Mem. Prelim. Determination Antidumping Duty Investigation of Certain Hardwood Plywood Products from the People's Republic of China ("Prelim. DM") at 4, PR 734.[1]  Seven companies filed requests for treatment as voluntary respondents, but Commerce did not select any voluntary respondents.  See Prelim. DM at 4; Final IDM at 34–37; Selection of Voluntary Respondent Mem. (Apr. 4, 2017), PR 451.

In the Final Determination, Commerce applied its intermediate input methodology to value Linyi Chengen's log inputs after determining that Linyi

---

[1]  Citations are to the public record ("PR"), confidential record ("CR"), public fifth remand record ("PRR"), and confidential fifth remand record ("CRR") document numbers filed in this case.  ECF Nos. 52, 53, 103, 104, 130, 131, 199, 200, 217, 218, 234, 235.

Chengen's log volume reporting methods were inherently imprecise.  Final

Determination, 82 Fed. Reg. at 53,461; Final IDM at 23, 25 (valuing veneers,

instead of logs, as the input used to produce hardwood plywood).  Commerce

stated that it was unable to verify Linyi Chengen's reported log consumption

against any third-party sources, such as supplier invoices.  Final IDM at 25.  Based

on Commerce's application of the intermediate input methodology, Commerce

calculated a dumping margin rate of 183.36% for Linyi Chengen.  Final

Determination, 82 Fed. Reg. at 53,462.  Commerce applied Linyi Chengen's

margin of 183.36% as the separate rate for the non-examined companies that were

granted separate rate status ("all-others separate rate"), which was assigned to the

Separate Rate Plaintiffs.  Id.; Final IDM at 48.

      In Linyi Chengen I, this Court upheld the application of adverse facts

available against Bayley and remanded with respect to Commerce's calculation of

Linyi Chengen's dumping margin rate, instructing Commerce to reconsider the

accuracy of Linyi Chengen's log consumption calculations and the all-others

separate rate applied to the Separate Rate Plaintiffs based on any changes to Linyi

Chengen's margin on remand.  Linyi Chengen I, 43 CIT at __, 391 F. Supp. 3d at

1297.

      In Linyi Chengen II, this Court remanded for Commerce to accept

documents offered by Linyi Chengen in order to provide a more complete record

on which to base Commerce's reasoning.  Linyi Chengen II, 44 CIT at __, 433 F.

Supp. 3d at 1285.  The Court noted in Linyi Chengen II that Commerce should

reconsider its application of the intermediate input methodology, accept the

previously rejected documents that Linyi Chengen presented at verification, and

make appropriate adjustments to the separate rates of other parties if Commerce

made changes to Linyi Chengen's dumping margin on remand.  Id. at __, 433 F.

Supp. 3d at 1286.

       In the Second Remand Redetermination, Commerce accepted Linyi

Chengen's verification documents, determined that Linyi Chengen's reported log

volumes were accurate, and did not apply the intermediate input methodology to

calculate Linyi Chengen's dumping margins.  Linyi Chengen III, 44 CIT at __, 487

F. Supp. 3d at 1354; see also Final Results of Redetermination Pursuant to Court

Remand Order [for Slip Op. 20-22] ("Second Remand Redetermination"), ECF

No. 113-1, 114-1.  Commerce applied its normal methodology to value all factors

of production used in each stage of production, did not apply adverse facts

available to Linyi Chengen, and revised Linyi Chengen's dumping margin from

183.36% to 0%.  44 CIT at __, 487 F. Supp. 3d at 1356.  Commerce applied

adverse facts available to Bayley after determining that it was a China-wide entity

and imposed an adverse facts available dumping margin rate ("AFA dumping

margin rate" or "AFA rate") of 114.72% for Bayley.  Id.  Commerce recalculated

the Separate Rate Plaintiffs' dumping margin rate by averaging Linyi Chengen's

0% rate and Bayley's 114.72% AFA rate, resulting in a revised dumping margin of

57.36% for the Separate Rate Plaintiffs.  Id. at __, 487 F. Supp. 3d at 1354.

       In Linyi Chengen III, the Court sustained as reasonable and supported by

substantial evidence Commerce's determination that Linyi Chengen's dumping

margin was 0%, but remanded for Commerce to reconsider the all-others separate

rate of 57.36%.  See id. at __, 487 F. Supp. 3d at 1359.  This Court relied on

Yangzhou Bestpak Gifts & Crafts Co. v. United States ("Yangzhou Bestpak"), 716

F.3d 1370 (Fed. Cir. 2013), holding that Commerce's determination of the all-

others separate rate of 57.36% for the voluntary, fully cooperating Separate Rate

Plaintiffs by using the simple average of Linyi Chengen's 0% rate and Bayley's

AFA rate of 114.72% was unreasonable as applied, and remanded for Commerce

to reconsider or provide additional evidence.  Id. at __, 487 F. Supp. 3d at 1358–

59.  The Court noted that Commerce created its own problem when it selected only

two mandatory respondents, which resulted in minimal information on the record

to support its assertions regarding the potential dumping margins of the Separate

Rate Plaintiffs.  Id. at __, 487 F. Supp. 3d at 1358.  The Court also found that the

margins of 114.72% and 104.06% contained in the Petition did not provide support

for the assertion that the Separate Rate Plaintiffs' dumping margins are different

than Linyi Chengen's 0% rate because the margins in the Petition are "untethered"

to the actual dumping margins of the Separate Rate Plaintiffs.  Id.  The Court

concluded that Commerce failed to cite any credible economic evidence on the

record showing that the Separate Rate Plaintiffs' dumping margins are different

than Linyi Chengen's 0% rate or connecting the Separate Rate Plaintiffs' dumping

margins with the rate of 57.36% that was derived from the average of Linyi

Chengen's 0% and Bayley's AFA rate of 114.72%.  Id. at __, 487 F. Supp. 3d at

1359.

    In the Third Remand Redetermination, Commerce again applied "any

reasonable method" and calculated the all-others separate rate of 57.36% by using

the simple average of Linyi Chengen's 0% rate and Bayley's AFA rate of

114.72%.  Linyi Chengen IV, 45 CIT at __, 539 F. Supp. 3d at 1276; see also Final

Results of Redetermination to Court Remand Order [for Slip Op. 20-183] ("Third

Remand Redetermination"), ECF No. 143-1, 144-1.  Commerce reviewed a single

commercial invoice and determined that the approximately 20% difference

between the prices of the Petition Separate Rate Application and Linyi Chengen

supported Commerce's application of a 57.36% all-others separate rate to the

Separate Rate Plaintiffs.  45 CIT at __, 539 F. Supp. 3d at 1277.

    In Linyi Chengen IV, the Court concluded that Commerce reasonably

supported its determination to depart from the expected method in determining the

all-others separate rate because Linyi Chengen's 0% rate would not be reflective of

the potential dumping margins, but remanded for Commerce to reconsider the all-

others separate rate of 57.36%.  Id. at __, 539 F. Supp. 3d at 1276.  The Court

again relied on Yangzhou Bestpak and concluded that the 57.36% rate, based on

the simple average of Linyi Chengen's 0% and Bayley's AFA rate of 114.72%,

applied to the voluntary, fully cooperating Separate Rate Plaintiffs was

unreasonable as applied.  Id. at __, 539 F. Supp. 3d at 1277–78.  The Court noted

that Commerce was still required to assign dumping margins as accurately as

possible, and that Commerce cited as record evidence only one commercial invoice

showing the price difference of 20% between the prices of the Petition Separate

Rate Application and Linyi Chengen.  Id.  This Court stated that Commerce

acknowledged that the record provided no opportunity for Commerce to know or

to calculate the actual dumping margins of the Separate Rate Plaintiffs.  Id.  The

only substantiated and calculated basis for a dumping margin on the record was

Linyi Chengen's 0% margin.  Id.  The Court remanded again because Commerce

cited as record evidence only one commercial invoice showing an approximately

20% price difference, and concluded that Commerce's 57.36% all-others separate

rate assigned to the voluntary, fully cooperating Separate Rate Plaintiffs was not

reasonable or supported by substantial evidence.  Id.

    In the Fourth Remand Redetermination, Commerce applied "any reasonable

method" and again calculated the all-others separate rate of 57.36% by using the

simple average of Linyi Chengen's 0% rate and Bayley's AFA rate of 114.72%.

Linyi Chengen V, 46 CIT at __, 609 F. Supp. 3d at 1397; see also Final Results of

Redetermination Pursuant to Court Remand Order [for Slip Op. 21-127] ("Fourth

Remand Redetermination"), ECF No. 205-1, 206-1.

   In Linyi Chengen V, the Court remanded for Commerce to reconsider its

calculation of an all-others separate rate of 57.36%.  46 CIT at __, 609 F. Supp. 3d

at 1404.  The Court again relied on Yangzhou Bestpak, in which Commerce

calculated the all-others separate rate margin of Yangzhou Bestpak Gifts & Crafts

Co. ("Bestpak") by using the simple average of an AFA rate and a de minimis rate,

similar to the facts in this case.  Id. at __, 609 F. Supp. 3d at 1401–02.  This Court

found similarities between this case and Yangzhou Bestpak, in which the U.S.

Court of Appeals for the Federal Circuit ("CAFC") held that substantial evidence

did not support Commerce's all-others separate rate calculation and that the simple

averaging of an AFA rate and a de minimis rate were unreasonable as applied to

fully cooperating separate rate respondents.  Id. at __, 609 F. Supp. 3d at 1402.

This Court noted that the CAFC found in Yangzhou Bestpak that it was unfair and

perhaps punitive to assign a fully cooperating separate rate respondent a margin

that was one half of the China-wide entity rate—a rate reserved for those entities

presumed to be under foreign government control.  Id.  This Court also stated that

the CAFC in Yangzhou Bestpak rejected Commerce's claim that time constraints

precluded it from investigating more thoroughly, and the CAFC found no statutory

or caselaw support for the proposition that limited resources or statutory time

constraints can override fairness and accuracy.  Id. at __, 609 F. Supp. 3d at 1402–

03.  This Court concluded that the separate rate assigned to the voluntary, fully

cooperating Separate Rate Plaintiffs was unreasonable as applied because it was

one half of the AFA rate, making it unfair and unduly punitive, and the Court

instructed Commerce to reconsider the all-others separate rate consistent with its

opinion, including whether other evidence on the record supported a lower rate.

Id. at __, 609 F. Supp. 3d at 1403–04.  The Court also concluded that because

Commerce selectively analyzed the invoice data while ignoring other potentially

contrary record evidence, Commerce's determination was not supported by

substantial evidence.  Id. at __, 609 F. Supp. 3d at 1404.  The Court advised

Commerce to not submit the same 57.36% all-others separate rate for review

without new, substantial evidence in support, as this rate was unreasonable as

applied to fully cooperating respondents.  Id.

      In the Fifth Remand Redetermination, Commerce assigned Linyi Chengen's

antidumping duty margin of 0% to the Separate Rate Plaintiffs under protest and

explained that Commerce would exclude from the Order voluntary applicants who

submitted all initial responses, while including in the Order voluntary applicants

who failed to submit all initial responses on time.  Fifth Remand Redetermination

Consol. Court No. 18-00002                                               Page 17

at 21–22.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction under 19 U.S.C.

§ 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to

review actions contesting the final results of an administrative review of an

antidumping duty order.  The Court shall hold unlawful any determination found to

be unsupported by substantial evidence on the record or otherwise not in

accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court reviews

determinations made on remand for compliance with the Court's remand order.

Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT 727, 730, 992 F.

Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I.    Legal Framework

Commerce is authorized by statute to calculate and impose a dumping

margin on imported subject merchandise after determining that it is sold in the

United States at less than fair value.  19 U.S.C. § 1673.  Commerce determines an

estimated weighted average dumping margin for each individually examined

exporter and producer and one all-others separate rate for non-examined

companies.  19 U.S.C. § 1673d(c)(1)(B).  The CAFC has upheld Commerce's

reliance on this method for determining the estimated all-others separate rate in

§ 1673d(c)(5) when "determining the separate rate for exporters and producers

from [non-market] economies that demonstrate their independence from the

government but that are not individually investigated."  <u>Changzhou Hawd Flooring</u>

<u>Co. v. United States</u> ("<u>Changzhou Hawd IV</u>"), 848 F.3d 1006, 1011–12 (Fed. Cir.

2017) (citing <u>Albemarle Corp. & Subsidiaries v. United States</u> ("<u>Albemarle</u>

<u>Corp.</u>"), 821 F.3d 1345, 1348 (Fed. Cir. 2016)).

The general statutory rule for calculating the all-others separate rate is to

weight-average the estimated weighted average dumping margins established for

exporters and producers individually investigated, excluding any zero and *de*

*minimis* margins, and any margins determined entirely on the basis of facts

available, including adverse facts available.  19 U.S.C. § 1673d(c)(5)(A).  If the

estimated weighted average dumping margins established for all exporters and

producers individually investigated are zero or *de minimis*, or are determined

entirely under 19 U.S.C. § 1677e, Commerce may invoke an exception to the

general rule.  <u>Id.</u> § 1673d(c)(5)(B).

The Statement of Administrative Action provides guidance that when the

dumping margins for all individually examined respondents are determined

entirely on the basis of the facts available or are zero or *de minimis*, the "expected

method" of determining the all-others separate rate is to weight-average the

margins determined pursuant to the facts available and the zero and *de minimis*

margins, provided that volume data is available.  Uruguay Round Agreements Act,

Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, vol. 1, at

873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201.

Commerce may depart from the "expected method" and use "any reasonable

method" if it reasonably concludes that the expected method is not feasible or

results in an average that would not be reasonably reflective of potential dumping

margins for non-investigated exporters or producers.  See 19 U.S.C.

§ 1673d(c)(5)(B); Navneet Publ'ns (India) Ltd. v. United States, 38 CIT __, __,

999 F. Supp. 2d 1354, 1358 (2014) ("[T]he following hierarchy [is applied] when

calculating all-others rates—(1) the '[g]eneral rule' set forth in [19 U.S.C.]

§ 1673d(c)(5)(A), (2) the alternative 'expected method' under [19 U.S.C.]

§ 1673d(c)(5)(B), and (3) any other reasonable method when the 'expected

method' is not feasible or does not reasonably reflect potential dumping

margins."); see also SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201;

Albemarle Corp., 821 F.3d at 1351–52 (quoting SAA at 873, reprinted in 1994

U.S.C.C.A.N. at 4201)  Any reasonable method may include averaging the

estimated weighted average dumping margins determined for the exporters and

producers individually investigated.  19 U.S.C. § 1673d(c)(5)(B).

While Commerce is permitted to use various methodologies, "it is possible

for the application of a particular methodology to be unreasonable in a given case."

Yangzhou Bestpak, 716 F.3d at 1378 (quoting Thai Pineapple Canning Indus.

Corp. v. United States, 273 F.3d 1077, 1085 (Fed. Cir. 2001)).  Separate rate

calculations for non-mandatory, cooperating separate rate respondents must bear

some relationship to the respondents' actual dumping margins despite a thin

record.  See generally id. at 1379–80; see also F.lli De Cecco Di Filippo Fara S.

Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("[T]he

purpose of [19 U.S.C. § 1677e] is to provide respondents with an incentive to

cooperate, not to impose punitive, aberrational, or uncorroborated margins.").  A

speculative dumping margin using the average of a *de minimis* rate and an AFA

rate cannot be upheld based on weak record evidence, particularly when

Commerce itself created the scarcity of evidence.  See Bosun Tools Co. v. United

States ("Bosun Tools"), No. 2021-1930, 2022 WL 94172, at *4 (Fed. Cir. 2022)

(comparing Yangzhou Bestpak where "the record was 'so thin' that Commerce

could not have reasonably 'found evidence to support [its] determination'"

to Bosun Tools where "in contrast, there was no such lack of data").

## II.    The All-Others Separate Rate

Defendant-Intervenor argues that Commerce's determination to assign Linyi

Chengen's rate of 0% to the Separate Rate Plaintiffs should be remanded because it

is not supported by substantial evidence or otherwise in accordance with law, and

requests that the Court remand for Commerce to either reopen the record or issue a

determination that is consistent with the Court's prior rulings.  Def.-Interv.'s

Opp'n Cmts. at 6–11; Def.-Interv.'s Suppl. Letter at 2.

Consolidated Plaintiffs assert that Commerce's determination to assign the

Separate Rate Plaintiffs a 0% margin rate is reasonable and that the Court should

not order Commerce to reopen the record on remand to collect additional

information to recalculate a separate rate above zero.[2]  See Dehua TB's Cmts. at 1–

7; Taraca's Cmts. at  2–6; Celtic's Cmts. at 2–7; Dehua TB's Suppl. Letter;

Taraca's Suppl. Letter ; Celtic's Suppl. Letter.

Defendant contends that Commerce's calculation of the separate rate is in

accordance with the Court's remand order.  Def.'s Cmts. at 6–10.  Defendant did

not file a post-argument letter regarding the issue of re-opening the record.

### A.    Alternative Margin Calculation Options

Commerce had at least six alternatives to consider in determining the

dumping margin for the Separate Rate Plaintiffs: 0%, 57.36%, and four additional

options proposed by Defendant-Intervenor during the fifth remand.  Commerce

---

[2]  Consolidated Plaintiffs Dehua TB and Taraca also incorporate by reference the arguments of the other Parties in support of Commerce's determination to assign a zero margin to Separate Rate Plaintiffs.  See Dehua TB's Cmts. at 8 ("Consolidated Plaintiffs join in and incorporate by reference the arguments of the other parties in support of Commerce's [Fifth] Remand Redetermination."); Taraca's Cmts. at 7 ("Taraca et al also hereby adopt and incorporate by reference the comments being filed on the Fifth Remand Redetermination regarding the recalculation of the separate rate.").

considered all of these options and ultimately selected 0% in the <u>Fifth Remand</u>

<u>Redetermination</u>, explaining that, "[a]fter weighing all options and considering the

views of the Court, we find, under protest, that assigning the rate calculated for

[Linyi Chengen], *i.e.*, zero percent, is the only remaining alternative on the

record." <u>Fifth Remand Redetermination</u> at 2.

Defendant-Intervenor contends that Commerce ignored other viable

alternatives, arguing that Commerce failed to evaluate the alternative options

because there is "no rational connection between the facts found (*i.e.*, the

Coalition's methodologies are less preferable than the 57.36[%]) and the choices

made (*i.e.*, assigning [Linyi] Chengen's [0%] margin)."  Def.-Interv.'s Opp'n

Cmts. at 8–11; <u>see also</u> Petitioner, Cmts. Draft Results Redetermination (Mar. 1,

2023) ("Coalition's Comments on Draft Results") at 6–11, PRR 7, CRR 1.

Defendant-Intervenor claims that Commerce did not address whether these

methodologies constituted "reasonable methods" but only explained why these

alternatives are less preferable than the 57.36% margin.  Def.-Interv.'s Opp'n

Cmts. at 8–11.  Defendant-Intervenor challenges Commerce's rejection of the

fourth alternative option as a "fallacy," arguing that Commerce relied in part on

Plaintiff's data in rejecting this option, yet it ultimately relied on Plaintiff's data to

apply a margin.  <u>Id.</u> at 9–10.

Commerce considered the four alternatives proposed by Defendant-Intervenor in the Coalition's Comments on Draft Results, but determined that the 0% rate calculated for Linyi Chengen was the only remaining alternative on the record.  Fifth Remand Redetermination at 15–16.  This Court previously concluded that a calculation of the all-others separate rate of 57.36% assigned to the voluntary, fully cooperating Separate Rate Plaintiffs was unreasonable as applied pursuant to Yangzhou Bestpak.

Defendant-Intervenor's proposed alternatives result in margins that are neither 0% nor 57.36%.  The first option proposed by Defendant-Intervenor suggests that Commerce should calculate normal value with a simple average of the Petition normal value and Linyi Chengen's normal value, and U.S. price with "weight-average unit values" ("AUVs") reported in quantity and value ("Q&V") submissions from all separate applicants, adjusted by the weighted selling expense adjustments reported by Linyi Chengen, for a margin of 10.06%.  Coalition's Comments on Draft Results at 8–10.

The second option proposed by Defendant-Intervenor suggests that Commerce should calculate normal value based on the Petition normal value only and U.S. price based on Q&V AUVs, without selling expense adjustments, for a margin of 57.08%.  Id. at 10.

The third option proposed by Defendant-Intervenor suggests that Commerce should weight-average the "bookend margins" by assigning a 0% rate to separate rate applicants with a Q&V AUV above Linyi Chengen's weighted average sale price, and the Petition margin of 114.72% to separate rate applicants with Q&V AUVs below Linyi Chengen's weighted average sale price, for a margin of 44.15%. Id. at 10–11.

The fourth option proposed by Defendant-Intervenor suggests that Commerce should calculate normal value based on product-specific normal values for Linyi Chengen and from the Petition, and U.S. price based on sales documentation provided by all separate rate applicants with two sub-options: (1) Commerce should match specific products with product-specific normal values for Linyi Chengen and the Petition when there are specific products; and (2) Commerce should use an average of the matching models for normal value from Linyi Chengen and the Petition for when there are products that include some, but not all, matching details, for a margin of 10.52%. Id.

Commerce explained that, "[a]lthough we appreciate the [Coalition's] creative attempts to determine other methodologies to calculate a separate rate, we disagree that these methodologies are more appropriate than the 57.36% margin, which we maintain is the appropriate alternative to the accurate margin calculated in the underlying investigation." Fifth Remand Redetermination at 15.  Commerce

stated that a methodology relying on Q&V AUVs as the basis for U.S. price is not superior to the methodologies that it applied in the Third Remand Redetermination and the Fourth Remand Redetermination.  Id.; see Third Remand Redetermination; Fourth Remand Redetermination.  Commerce acknowledged that Q&V data provide a global average view of a company's selling behavior, but rejected such methodology because such data do not consider product mix, which can be significant in some cases.  Fifth Remand Redetermination at 15.  Commerce stated that in prior remand determinations, it compared the Petition data and the separate rate applicants' actual selling behavior during the period of investigation and intentionally compared prices and costs for products that could be identified as identical products due to significant differences in pricing behaviors with such products.  Id.; see Third Remand Redetermination; Fourth Remand Redetermination.

Even though the fourth option addressed the specificity issue (matching similar products to the corresponding normal values), Commerce rejected the fourth option because the proposed methodology did not consider the differences between Plaintiff's and the Separate Rate Plaintiffs' companies.  Fifth Remand Redetermination at 15–16.  Commerce explained that due to differences between these two types of companies, such as a difference in cost structure, the comparisons between the selling price of these companies and normal value based

on Plaintiff's data would be unreliable and likely unrepresentative of the Separate

Rate Plaintiffs' potential dumping.  Id.  Commerce stated that Plaintiff's selling

behavior would not be reflective of the Separate Rate Plaintiffs', and in turn, not

reflective of the Separate Rate Plaintiffs' estimated dumping margin during the

period of investigation.  Id.

The Court concludes that Commerce properly considered and rejected

Defendant-Intervenor's proposed alternatives because Commerce articulated its

reasons for rejecting the methodologies based on Q&V data and its review of

record evidence.  The Court will uphold the agency's determination if the agency

has examined the relevant data, articulated a satisfactory explanation, and

accounted for detracting evidence.  Motor Vehicle Mfrs. Ass'n v. State Farm Mut.

Auto. Ins., 463 U.S. 29, 43 (1983); Universal Camera Corp. v. NLRB, 340 U.S.

474, 477 (1951).  In the fifth remand, Commerce explained that it considered six

possibilities for the all-others separate rate: the 0% rate, the 57.36% rate, and the

four alternative rates proposed by Defendant-Intervenor.  Commerce articulated its

reasons for rejecting the four options proposed by Defendant-Intervenor based on

Commerce's analysis of economic evidence on the record showing differences

between Linyi Chengen and the Separate Rate Plaintiffs, such as their selling, cost

structure, and pricing that could not be adequately addressed by Defendant-

Intervenor's proposed methodologies.  This Court in Linyi V instructed Commerce

to not resubmit the unreasonable as applied 57.36% rate without new evidence in

Commerce's <u>Fifth Remand Redetermination</u>.  <u>Linyi V</u>, 46 CIT at __, 609 F. Supp.

3d at 1404.  Commerce could not cite new evidence in support of its 57.36% rate,

and thus determined that the 0% rate was the only remaining option available to

Commerce.

Accordingly, because Commerce articulated its reasoning sufficiently, the

Court sustains Commerce's determination to assign an antidumping duty margin

rate of 0% to the Separate Rate Plaintiffs.

### B.    Reopening the Record

Defendant-Intervenor requests that the Court direct Commerce to either

calculate a margin other than 0% or 57.36%, or to remand with a request that

Commerce reopen the administrative record to calculate a margin other than 0% or

57.36%.  Def.-Interv.'s Suppl. Letter at 1–5.  Defendant-Intervenor contends that

remand is appropriate for Commerce to reopen the record to collect additional

information to calculate a different separate rate.  <u>Id.</u> at 6.

Plaintiff and Consolidated Plaintiffs assert that the Court should not require

Commerce to reopen the record.  <u>See</u> Dehua TB's Suppl. Letter; Celtic's Suppl.

Letter; Taraca's Suppl. Letter.  Consolidated Plaintiffs Dehua TB and Celtic also

raise the issues of fairness, finality, and judicial economy if Commerce were to

reopen the record for a sixth remand redetermination.  Dehua TB's Suppl. Letter at
4; Celtic's Suppl. Letter at 5–6.

      Judicial compulsion to reopen the record is limited to unusual circumstances,
such as fraud or record inaccuracies.  Essar Steel Ltd. V. United States, 678 F.3d
1268, 1277–78 (Fed. Cir. 2012); see Home Prods. Int'l, Inc. v. United States, 633
F.3d 1369, 1376, 1381 (Fed. Cir. 2011); Gold East Paper (Jiangsu) Co. v. United
States, 38 CIT __, __, 991 F. Supp. 2d 1357, 1361–65 (2014); Changzhou Wujin
Fine Chem. Factory Co. v. United States, 701 F.3d 1367, 1377 (Fed. Cir. 2012).
This case does not present facts such as fraud or inaccuracies in the record that fall
under the limited exceptions to justify the Court remanding for Commerce to
reopen the record.  Although the Court has noted several times that the paucity of
the record is Commerce's own making due to its selection of only two mandatory
respondents, similar to the facts in Yangzhou Bestpak, the Court concludes that
Commerce's decision to not reopen the record at this time after nearly six years of
litigation is not arbitrary and capricious.  The Court will not remand to request
Commerce to reopen or supplement the record.

### III.    Exclusion and Inclusion of Voluntary Applicant Firms

      Commerce determined that voluntary applicant firms (or voluntary-review
firms) who submitted timely complete responses would be excluded from the
Order, but firms who submitted only incomplete voluntary applicant requests

without full responses would continue to be included in the Order.  See Fifth
Remand Redetermination at 18–21.

 Defendant-Intervenor challenges Commerce's determination to exclude
Jiangyang Wood and Dehua TB (voluntary applicant firms who submitted full
responses) from the Order but supports Commerce's determination to include
Sanfortune Wood and Longyuan Wood (voluntary applicant firms who submitted
shorter two-page requests) in the Order.  Def.-Interv.'s Opp'n Cmts. at 11–16;
Def.-Interv.'s Supp. Cmts. at 2–6.  Defendant-Intervenor contends that Jiangyang
Wood, Dehua TB, Sanfortune Wood, and Longyuan Wood should all be included
in the Order based on the CAFC's holding in Changzhou Hawd Flooring Co. v.
United States ("Changzhou Hawd VI"), 947 F.3d 781, 790 (Fed. Cir. 2020), and
Commerce's administrative determination in Passenger Vehicle and Light Truck
Tires from the Socialist Republic of Vietnam, 86 Fed. Reg. 28,559 (Dep't of
Commerce May 27, 2021) (final affirmative determination of sales at less than fair
value), and accompanying Issues and Decision Memorandum.  Id.  Sanfortune
Wood and Longyuan Wood argue that they should be excluded from the Order, but
do not challenge Commerce's exclusion of Jiangyang Wood and Dehua TB from
the Order.  Sanfortune Wood's and Longyuan Wood's Cmts. at 1.  Defendant
asserts that Commerce correctly proposed to exclude certain companies from the
Order.  Def.'s Cmts. at 10–14.  Consolidated Plaintiffs neither challenge

Commerce's exclusion of Jiangyang Wood and Dehua TB from the Order nor

comment on the inclusion of Sanfortune Wood and Longyuan Wood in the Order.

See Dehua TB's Cmts. at 7; Celtic's Cmts. at 7–11; Taraca's Cmts. at 6–7.

Consolidated Plaintiff Dehua TB incorporates by reference the arguments of the

other Parties in support of Commerce's determination to exclude Dehua TB and

Jiangyang Wood.  See Dehua TB's Cmts. at 8.

### A.    Commerce's Exclusion Regulation

Commerce has provided that it will exclude from an affirmative final

determination "any exporter or producer for which [Commerce] determines an

individual weighted-average dumping margin . . . of zero or *de minimis*."  19

C.F.R. § 351.204(e)(1); see also 19 U.S.C. § 1673d(a)(4) ("In making a

determination under this subsection, the administering authority shall disregard any

weighted average dumping margin that is *de minimis* as defined in section

1673b(b)(3) of this title").  The CAFC has stated that "it is clear that individually

reviewed firms with *de minimis* dumping margins must be excluded from all

obligations under an antidumping duty order, [but] the statute does not speak with

any clarity to conferring the same benefit on non-individually reviewed firms

assigned a *de minimis* dumping margin or zero rate."  Changzhou Hawd VI, 947

F.3d at 790; see also Changzhou Hawd Flooring Co. v. United States ("Changzhou

Hawd V"), 42 CIT __, __, 324 F. Supp. 3d 1317, 1325–26 (2018), aff'd, 947 F.3d

781 (Fed. Cir. 2020) (finding the statutory language ambiguous when discussing "whether that [0%] 'all-others rate,' 19 U.S.C. §§ 1673d(c)(1)(B)(i)(II), 1673d(c)(5), constitutes 'any' *de minimis* weighted average dumping margin that Commerce must 'disregard' pursuant to 19 U.S.C. § 1673d(a)(4)").

The Court finds guidance in <u>Changzhou Hawd V</u>, which explained:

> What does give the court pause, however, is Commerce's application of the exclusion regulation to the Voluntary Applicants.  Given the history of the exclusion regulation in which concerns about limiting exclusion to selected/mandatory respondents were mitigated through the availability of voluntary examination, there is an inherent arbitrariness in Commerce (1) issuing a blanket refusal to entertain voluntary examination requests, and (2) subsequently denying exclusion to the Voluntary Applicants that were assigned a "representative" separate rate of zero (which again, is just a proxy for the individual weighted average dumping margins Commerce should theoretically calculate for all respondents).

<u>Changzhou Hawd V</u>, 42 CIT at __, 324 F. Supp. 3d at 1326–27.  The court reasoned that:

> Commerce's application of its exclusion regulation to the Voluntary Applicants it assigned "representative" [0%] margins has two insurmountable problems.  The first is Commerce's refusal to conduct any voluntary examinations, preventing the Voluntary Applicants from demonstrating directly their own evidence of fair trading.  The second is Commerce's continuing assumption or inference that Voluntary Applicants denied individual examination and ultimately assigned a "representative" [0%] margin were nevertheless unfairly trading, precluding exclusion.  The court questions how a reasonable mind could maintain such an assumption or inference against the Voluntary Applicants.

<u>Id.</u> at __, 324 F. Supp. 3d at 1327.

The CAFC affirmed the conclusion that Commerce did not adequately

support its determination to include voluntary applicants in the Order but provided

two caveats to its ruling:

> [First,] we say nothing about [the U.S. Court of International Trade's]
> reversal of Commerce rather than remand for further explanation . . .
> [and second,] we understand [the court's decision to exclude voluntary-
> review firms from the antidumping duty order] as not going beyond
> holding that Commerce has not in this proceeding provided a sufficient
> rationale for continuing to include the voluntary-review firms in the
> [antidumping duty order], and we rely on that understanding in
> affirming the [court's] judgment.  It remains open to Commerce in the
> future, should the issue arise, to address this issue more fully than it has
> done in this investigation.  We do not prejudge the reasonableness of
> any justification Commerce might yet articulate for deciding to include
> voluntary-review firms in an antidumping-duty order.

Changzhou Hawd VI, 947 F.3d at 794.  Commerce interpreted the Changzhou

Hawd VI holding to allow Commerce to determine its position on when to grant

exclusions to voluntary-review firms.  See Fifth Remand Redetermination at 18–19

("[Changzhou Hawd VI] does not compel Commerce to exclude all companies that

requested voluntary status but that it would review any further explanation

provided by Commerce at that time.").

## B.    Analysis

Commerce distinguished between the two types of voluntary applicants in

the fifth remand—Dehua TB and Jiangyang Wood, who submitted requests for

voluntary respondent treatment with hundreds of pages of questionnaire responses

and supporting documentation, and Sanfortune Wood and Longyuan Wood, who

submitted two-page requests with no questionnaire responses or supporting

documentation.  <u>Fifth Remand Redetermination</u> at 20; <u>see</u> Jiangyang Wood's Sec.

A Resp. (Feb. 13, 2017), PR 308–10, CR 245–47; Jiangyang Wood's Sec. C Resp.

(Feb. 28, 2017), PR 351, CR 289–92; Jiangyang Wood's Sec. D Resp. (Feb. 28,

2017), PR 352, CR 293–304; Longyuan Wood Letter, "Request for Treatment as

Mandatory Respondent or Request for Voluntary Respondent Treatment as an

Alternative" (Dec. 9, 2016), PR 44; Sanfortune Wood Letter, "Request for

Treatment as Mandatory Respondent or Request for Voluntary Respondent

Treatment as an Alternative" (Dec. 9, 2016), PR 43.[3]  Commerce explained that

Jiangyang Wood and Dehua TB should be excluded from the Order because they

met the first requirement to be considered for voluntary respondent status under 19

U.S.C. § 1677m(a), filing the same information expected from mandatory

respondents by the same deadline.  <u>Fifth Remand Redetermination</u> at 19–20.  In

contrast, Commerce noted that Sanfortune Wood's and Longyuan Wood's two-

page requests were "virtually identical in content and required no commitment or

effort on behalf of these companies" and were not certified, compared to the

"hundreds of pages of questionnaire responses and supporting documentation, as

---

[3] Dehua TB's responses to Sections A, C, and D were not included in the
administrative record.

well as sales and factor of production databases" from Jiangyang Wood and Dehua

TB.  Id. at 20.  Commerce reasoned that:

> [T]here is a significant difference between those companies that merely
> submit a brief statement requesting to be selected as a voluntary
> respondent and those companies that provide complete questionnaire
> responses by the deadlines established for the mandatory respondents,
> such that Commerce has the information before it to potentially select
> them as voluntary respondents and still complete the investigation
> without undue delay.

Id. at 20–21.

Pursuant to 19 U.S.C. § 1677m(a), upon limiting the number of respondents

under 19 U.S.C. § 1677f-1(c), Commerce "shall establish an . . . individual

weighted average dumping margin for [a company] not initially selected for

individual examination" if: (1) the company seeking individual examination

submits "*the information requested from exporters or producers selected for*

*examination*" by the same deadlines that apply to the selected respondents; and (2)

the number of such companies is not so large to burden or delay investigation of

the individually examined companies.  See 19 U.S.C. § 1677m(a) (emphasis

added).  A voluntary respondent accepted for individual examination is subject to

the same requirements as a company initially selected by Commerce for individual

examination under 19 U.S.C. § 1677f-1(c)(2) or 19 U.S.C. § 1677f-1(e)(2)(A),

including the requirements of 19 U.S.C. § 1677m(a).  See 19 C.F.R.

§ 351.204(d)(2).

The Court agrees with Defendant's argument that, "[c]rucially, the relevant portion of the statute only applies to a party 'who submits to the administering authority the information requested from exporters or producers selected for examination.'" Def.'s Cmts. at 13 (citing 19 U.S.C. § 1677m(a)). The Court also finds the Coalition's argument persuasive when it states that:

> Indeed, even if Commerce had selected voluntary respondents, [Sanfortune Wood and Longyuan Wood] would not have been eligible to be selected as they did not satisfy the requirements to be treated as a voluntary respondent. . . . In other words, even if Commerce had accepted companies as voluntary respondents and calculated individual margins for these companies, no such margins would have been calculated for [Sanfortune Wood and Longyuan Wood].

Def.-Interv.'s Supp. Cmts. at 3 (citing Fifth Remand Redetermination at 19–20 (explaining that a company must submit responses to the questionnaires by the deadline established for the mandatory respondents to be considered for voluntary respondent status)).

This case involves the situation contemplated by the CAFC in Changzhou Hawd VI when the court stated that:

> It remains open to Commerce in the future, should the issue arise, to address this issue more fully than it has done in this investigation. We do not prejudge the reasonableness of any justification Commerce might yet articulate for deciding to include voluntary-review firms in an antidumping-duty order.

Changzhou Hawd VI, 947 F.3d at 794.

The Court concludes that Commerce's distinction between the voluntary applicants based on whether "full questionnaire responses" were submitted in accordance with 19 U.S.C. § 1677m(a) is a reasonable justification to exclude from the Order the voluntary applicants who submitted timely full questionnaire responses because they submitted the same information required of mandatory respondents by the same deadline that would allow Commerce to select them as voluntary respondents, if Commerce had chosen to select any voluntary respondents in this case.

In an issue of first impression before the U.S. Court of International Trade, the Court also concludes that Commerce's determination to include in the Order voluntary applicants who failed to submit the full responses expected of mandatory respondents under 19 U.S.C. § 1677m(a) is reasonable because those voluntary applicants could not be selected as voluntary respondents due to incomplete and untimely information filed.  In a case such as this, when voluntary applicants submit only a two-page request for voluntary respondent treatment without timely submitting any of the information required of mandatory respondents pursuant to 19 U.S.C. § 1677m(a), the Court concludes that it is reasonable for Commerce to include those voluntary applicants in the Order.  By submitting only a cursory request for voluntary respondent treatment without satisfying the statutory criteria under 19 U.S.C. § 1677m(a), those voluntary applicants would not be eligible for

individually calculated margins even if they had been selected by Commerce as voluntary respondents.  Sanfortune Wood and Longyuan Wood argue that they were not given a chance to directly demonstrate their own evidence of fair trading because Commerce refused to conduct voluntary examinations, but they did not satisfy the statutory criteria by filing timely information required of mandatory respondents that would enable them to prove their fair trading if selected as voluntary respondents.  <u>See</u> Sanfortune Wood's and Longyuan Wood's Cmts. at 4.

The Court concludes that Commerce provided a reasonable explanation to justify its exclusion from the Order the voluntary applicants who submitted timely requests for voluntary respondent treatment with hundreds of pages of questionnaire responses and supporting documentation, providing the same information that mandatory respondents submitted by the same deadline in accordance with 19 U.S.C. § 1677m(a).  The Court also holds that Commerce was reasonable in continuing to include those voluntary applicants in the Order who did not submit timely information providing the same information that mandatory respondents submitted by the same deadline in accordance with 19 U.S.C. § 1677m(a).

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Court sustains Commerce's all-others separate rate

assigned to the Separate Rate Plaintiffs; and it is further

**ORDERED** that the Court sustains Commerce's determination to exclude

Dehua TB and Jiangyang Wood from the Order; and it is further

**ORDERED** that the Court sustains Commerce's determination to include

Sanfortune Wood and Longyuan Wood in the Order; and it is further

**ORDERED** that the Court sustains Commerce's <u>Fifth Remand</u>

<u>Redetermination</u>.

Judgment shall issue accordingly.


                                                      /s/ Jennifer Choe-Groves
                                                   Jennifer Choe-Groves, Judge


Dated:        October 10, 2023
            New York, New York